# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

UNITED STATES OF AMERICA                                           PLAINTIFF

v.                          NO. 4:09CR00305-02 JLH

RALPH FRANCIS DELEO                                             DEFENDANT

## OPINION AND ORDER

Ralph Francis Deleo was convicted of conspiracy to possess with intent to distribute more than 500 grams of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846; using a communication device to facilitate a felony drug transaction in violation of 21 U.S.C. § 843(b); and aiding and abetting the possession with intent to distribute more than 500 grams of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. This Court sentenced Deleo to 144 months imprisonment on Counts 1 and 4 and 48 months imprisonment on Count 3, all to run concurrently, for a total sentence of 144 months. The Eighth Circuit affirmed on direct appeal. *United States v. Thompson*, 690 F.3d 977 (8th Cir. 2012). Deleo has now filed a motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255. For reasons that will be explained, the motion is denied.

In the fall of 2008, the Federal Bureau of Investigation conducted an investigation that in part centered on a gambling operation managed by George Wylie Thompson of Cabot, Arkansas. Out of that investigation emerged three indictments, two of which named Ralph Francis Deleo, who resided in the Boston, Massachusetts, area, as a defendant. Deleo was indicted in this case and in *United States v. Ralph F. Deleo*, No. 1:09-CR-10391-DPW (D. Mass.) (hereinafter "the Massachusetts case"). The indictment in the Massachusetts case charged Deleo, Thompson, and two

other individuals with violating the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1962(d).[1]

During the investigation of Thompson, the FBI obtained wiretap authority pursuant to which agents listened to and recorded a large number of Thompson's telephone conversations. As a result of that investigation, in December of 2008 FBI agents developed intelligence leading them to believe that an associate of Thompson's named Tri Cam Le would be transporting contraband from Little Rock, Arkansas, to the Boston area on or about December 12, 2008. The FBI notified the Arkansas State Police and asked that agency to develop probable cause to stop the vehicle that Le was expected to drive. Pursuant to that request, Trooper Victor Coleman executed a traffic stop of Le in Lonoke County, Arkansas, on December 12 and obtained permission from Le to search the vehicle. During the search, Coleman seized 2.2 kilograms of cocaine. The charges against Deleo and Thompson in this case were based on that cocaine.

As mentioned, Le was an associate of Thompson. There was evidence that Thompson connected Deleo with Le and that Deleo sent a Federal Express package to Le containing $50,000. Le then traveled to California, purchased the 2.2 kilograms of cocaine, and returned to Little Rock before starting east to deliver the cocaine to Deleo in the vicinity of Boston.

In his section 2255 motion, Deleo alleges that he is entitled to relief because of ineffective assistance of counsel and prosecutorial misconduct. He first alleges pretrial ineffective assistance of counsel, arguing that his appointed counsel, Dale West, was ineffective for failing to press a motion to have him moved from the facility where he was detained to another facility where he would have

---

[1] The third indictment charged Thompson with several gambling and gun-related crimes, and two other individuals with related crimes. *United States v. Thompson*, No. 4:09CR00265-BRW (E.D. Ark.). As mentioned, Deleo was not named as a defendant in the third indictment.

2

access to equipment to listen to the wiretaps; for failing to investigate two key witnesses and for failing to interview the government's principle witness, Tri Cam Le; and for refusing to work with co-counsel, Garry Corrothers, because Corrothers is an African American. Next, Deleo contends that West was ineffective at trial for failing to object to the Federal Express envelope and for putting him on the witness stand and then taking him off, without testifying, after discovering that the government would cross-examine him on matters that had otherwise been excluded from evidence. Third, Deleo contends that West was ineffective for failing to file post-trial motions. Deleo's allegations of prosecutorial misconduct are that the government relied on false testimony by Tri Cam Le and that the government intentionally failed to investigate three material witnesses.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his lawyer's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Proving that counsel was deficient "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigations are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91, 104 S. Ct. at 2066. Because of the distorting effects of hindsight and the difficulty of viewing counsel's representation of the client from the perspective available to defense counsel at the time of trial, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. Proving that

3

the deficient performance prejudiced the defense requires showing that there is a reasonable probability that, but for defense counsel's mistakes, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S. Ct. at 2068-69. In determining whether there is a reasonable probability that but for counsel's mistakes the result would have been different, the Court must consider the totality of the evidence before the judge or the jury. *Id.* at 695, 104 S. Ct. at 2069.

Deleo first argues that West was ineffective because he "did not press" the issue of having Deleo move from one detention facility to another prior to trial. Deleo was detained in the Pulaski County Jail before trial. He first moved for placement in another facility on the grounds that he was not receiving adequate medical care. Document #52. The Court denied that motion. Document #53. Thereafter, Deleo continued to seek placement at another facility, requesting that the Court order that he be transferred to the Grant County Jail in Sheridan, Arkansas, where co-defendant Thompson was detained. Deleo's argument was that he could not listen to the CDs of the wiretap evidence in the Pulaski County Jail but that he could do so in the Grant County Jail. Moreover, he sought to be moved to Grant County so that he could discuss the case with George Thompson. Document #86. The Court denied that motion after trial. Document #119.

West was not ineffective for failing to press the issue of having Deleo moved. Pretrial detainees in federal court are placed in the custody of the United States Marshals Service, which contracts with several facilities for the placement of pretrial detainees. The Marshals Service then

4

assigns the pretrial detainees to the various facilities based upon a number of factors, one of which is security. The Court does not have the information that the Marshals Service has regarding the factors that result in the assignment of specific pretrial detainees to specific facilities, so the undersigned judge has never ordered the Marshals Service to assign a pretrial detainee to a particular facility or to move a pretrial detainee from a particular facility. The Court would not have done so in this case and would certainly not have ordered the Marshals Service to place Deleo in the Grant County Jail along with Thompson.

Deleo's second argument is that West was ineffective for failing to investigate two witnesses, Bao Chan and Tran Nguyen, who would have contradicted Le's testimony. Chan was a passenger in the vehicle with Le when Le was stopped by Coleman. The vehicle that Le was driving when he was stopped by Coleman was registered to Nguyen. Le testified that he had purchased the vehicle from Nguyen a couple of months earlier and that Nguyen had previously been his roommate. Le testified that Nguyen introduced him to Tony "Viet" Doan, who sold him the cocaine. Assuming, without deciding, that West was ineffective for failing to interview Chan and Nguyen, Deleo has failed to present anything in his motion to show prejudice. He has produced no affidavit or testimony from either of them and has offered nothing concrete regarding what their testimony would have been. *Cf. Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (where the habeas petitioner failed to produce an affidavit or testimony from a witness whom his lawyer failed to interview, the petition fails to meet the second element of the *Strickland* test). With respect to West's failure to interview Le before trial, the transcript shows that West was amply prepared to cross-examine Le and did so effectively. Furthermore, the item of testimony that Deleo contends should have been elicited was in fact elicited. One of Thompson's lawyers and an investigator interviewed Le in the Arkansas Department of

5

Correction, where he was then incarcerated. Le told them that neither Ralph nor George had anything to do with the cocaine, and that statement by Le was introduced into evidence through the investigator's testimony at trial. Tr. 521. Thus, Deleo has presented nothing to show that he was prejudiced by West's failure to interview Le before trial.

Deleo's third argument that West was ineffective relates to the relationship between West and his co-counsel, Garry Corrothers. Before trial, West moved for appointment of co-counsel on the grounds that the number of wiretaps and the complexity of the case required two lawyers. The Court granted the motion and appointed a second member of the Court's CJA panel, Garry Corrothers. Deleo alleges that West refused to work with Corrothers because he is an African American. West has submitted an affidavit in which he denies the allegation. The Court does not believe that the allegation is true, nor is there any basis for believing that, if the allegation is true, Deleo's defense was prejudiced.

First, West has been a member of this Court's CJA panel for several years. During those years, he has represented defendants who were African American, as well as defendants who were white. He has also worked with prosecutors who were African American, as well as prosecutors who were white. The Court has seen no evidence of racial bias by West. If there had been any such evidence, West would have been removed from the CJA panel.

Moreover, when Corrothers was appointed, it was Deleo, not West, who objected. The Court appointed Corrothers to assist West on July 22, 2010. On August 3, 2010, the Court received from Deleo a pro se motion to discharge Corrothers, which Deleo signed on July 30, 2010.[2] Document

---

[2] Deleo wrote letters requesting that Corrothers be discharged even earlier. And, in addition to the pro se motion, Deleo wrote West on August 3, with a copy to the Court, objecting to Corrothers, asking West to file a motion to discharge him, and stating that he would refuse to

#77. Deleo alleged in his motion that Corrothers was not qualified to assist effectively in the defense of his case and that Corrothers' presence was "highly prejudicial and a distraction." *Id*. After that motion was denied, Deleo filed a second motion to discharge Corrothers on August 24, 2010. Document #85. In that motion, Deleo stated that his lack of trust in Corrothers would prevent him from discussing his case with Corrothers and that it was highly improbable, with eight weeks left before trial, that Corrothers could assist in the presentation of his defense. *Id*. Even several months after trial, Deleo continued to complain about Corrothers. Deleo stated that neither West nor Deleo had the opportunity to discuss or prepare the case with Corrothers, who "just showed up at trial and sat there as a sleeping attorney, who fraudulently accepted CJA panel funding for services he did not render." Document #147 at 3-4. Thus, it was Deleo, not West, who stated that he objected to the appointment of Corrothers and indicated that he would not cooperate with him.

Deleo wrote the Court numerous letters before and after trial and filed numerous pro se motions before and after trial. He had ample opportunity to notify the Court before trial that West refused to work with Corrothers because of Corrothers' race. Although Deleo complained about West in several motions and letters, and although he complained vehemently about Corrothers, he never alleged that West and Corrothers could not work together because West was biased. The Court has no doubt that if West had refused to work with Corrothers because of Corrothers' race, Deleo would have mentioned that fact as a basis for discharging both of them in one of his many letters and motions to the Court.

When the trial concluded, the Court complimented all of the lawyers because all of them had done an excellent job. Tr. 641. Having reviewed the entire transcript in preparation for ruling on

---

communicate with Corrothers.

7

Deleo's section 2255 motion, the Court again is satisfied that all of the lawyers, including West, did an excellent job in representing their clients. With one exception, which will be discussed later, West appeared to be thoroughly prepared to defend Deleo and represented him zealously and intelligently throughout the trial. Although Corrothers did not interrogate witnesses or present arguments to the jury, West says that Corrothers provided valuable assistance at trial during consultations between the two of them. Deleo has presented nothing to indicate that his allegations regarding West being racially biased against Corrothers undermined the defense at trial, nor can the Court ascertain any prejudice to Deleo from reviewing the transcript.

As noted, Deleo contends that West was ineffective at trial in two respects. First, he contends that West failed to object to the Federal Express envelope and secondly he contends that West was ineffective for placing him on the stand and then taking him off without allowing him to testify.

The government introduced into evidence Federal Express records showing that on November 19, 2008, a package was sent from a person who identified himself as Ralph Deleo, using Deleo's telephone number and address, to Le at his apartment in Little Rock. Tr. 136; Gov't Ex. 9. Le testified that he was introduced to Deleo by Thompson and that Deleo sent him $50,000 in cash by Federal Express to use in purchasing the cocaine. Tr. 242-46. Deleo contends that West should have moved to exclude the evidence of the Federal Express envelope because the transfer of money, itself, was not indicative of participation in illegal behavior and because the government produced no evidence that Deleo was the person who put his name on the envelope or delivered it to a Federal Express agent.

While the mere transfer of money from Deleo to Le would have been insufficient to prove that Deleo was part of a conspiracy to possess cocaine with intent to distribute, there was a great deal more evidence presented than simply the Federal Express record.[3]

As to the issue of the identity of the person who sent the Federal Express package, at trial the defendants argued that the money sent in the Federal Express envelope was for a legitimate business purpose, not for the purpose of purchasing cocaine. Specifically, both defendants argued that the $50,000 was a loan from Deleo to Thompson which Thompson directed be sent to Le's address. The defense theory was that the money was to be used to purchase boat parts. Evidence was introduced that Thompson had an arrangement to provide boat parts for a company called Southern Marine, and the defendants introduced evidence that Le made trips to southeast Asia on Thompson's behalf for the purpose of finding manufacturers of boat parts. Tr. 272-78. The decision to pursue that line of defense, rather than contending some unknown person may have placed Deleo's name, address, and telephone number on the Federal Express airbill, is a strategic decision that was well within the bounds of professional competence. *Cf. Johnson v. Norris*, 537 F.3d 840, 848 (8th Cir. 2008). Furthermore, Deleo has attached to one of his briefs on the section 2255 motion letters that he wrote to the lawyer who represented him on appeal, Tim Cullen, and in those letters Deleo says:

> The issue of the envelope that the government used. I did loan and send co-defendant Thompson money. Thompson requested that it be sent to the witness Tri Cam Le because Cam Le worked for Thompson handling Thompsons [sic] Asian customers in his sports betting business and Cam Le was always home in the morning, enabling him to receive the Fed Ex envelope.

---

[3] *See infra* at 12-15.

9

Document #213 at 20, 25. Thus, Deleo has admitted that he sent the Federal Express package containing $50,000 in cash to Le, although he asserts that it was a loan to Thompson—just as West argued at trial. Deleo has failed to show that West was ineffective for failing to challenge the Federal Express envelope.

Deleo is partially correct, however, with respect to West's handling of him as a witness. After the government and Thompson had presented their cases, West called Deleo as a witness. Deleo took the stand, but before he could testify, the Court called a bench conference to discuss handwritten notes that Deleo had carried with him to the witness stand. The following colloquy occurred:

> THE COURT: Let me visit with you just a minute. You all come over here.
> (Bench conference reported as follows:)
> THE COURT: He's carried a notepad up, which I assume is notes he's taken during the course of this trial.
> MR. WEST: Yes, sir. If Mr. Harris wants to look at his notes now –
> THE COURT: I want to make sure that you all are aware of it and we weren't getting into waiving attorney-client privilege unknowingly or anything like that. We've been down this once.
> MR. WEST: Yes. And I explained to Mr. Deleo that Mr. Harris or Ms. Hoey would be able to look at the notes, and he understands that, Judge.
> THE COURT: And with decades of trying these cases –
> MR. WEST: I'm sure this is going to be quite exciting, Judge.
> MS. HOEY: All motions in limine sort of go out the window here.
> MR. WEST: Wait a minute. We can't get into any Mafia stuff.[4]
> MS. HOEY: Absolutely. It goes to his credibility, his source of income, his job. If he gets up here and paints himself as a handyman, boom, firearms calls, Jerry Massey calls. He's taking the stand, and if he paints himself as "I'm a handyman at Corporate Stay," every Jerry Massey call –
> THE COURT: I don't know what he's going to say, obviously.

---

[4] A superseding information in the Massachusetts case charged that Deleo was the manager of a segment of a mafia organization known as the Colombo Family, which is one of five mafia families based in New York. The Massachusetts Case Docket No. 95 at 1-3. After the trial in this case, Deleo pled guilty to the superseding information in the Massachusetts case and was sentenced to 199 months in prison to run concurrently with the sentence in this case. After he was sentenced in Massachusetts, Deleo moved to set aside his guilty plea. The District Court of Massachusetts has not yet ruled on that motion.

10

> MR. WEST: Well, Your Honor, I don't know either. I've a pretty good idea. And I've talked with him. We've talked for hours upon end. But, Your Honor, I know, I mean, this is probably the most intense moment I've ever had as an attorney, and I just want you to know that I need to let him know that we're not going to talk about any of that, we're not going to get into it. But that was a condition that he placed on his testimony, that "They're not going to get into the Mafia. Then if they are, I'm not going to testify." Now, you know, the Mafia has been excluded here, and how he's got a job, he gambles, things like that.
> THE COURT: He can open the door. I don't know what he's going to testify to, but he certainly can open the door to things. So if you need to visit with him again, you can.
> MR. HENDRIX: I will prospectively renew my motion for severance and renew it again.
> THE COURT: Let's take a recess for you to visit with him.
> (Whereupon, proceedings continued in open court as follows:)
> THE COURT: Ladies and gentlemen, we're going to excuse you for a few minutes. You all can file out.
> (Whereupon, the jury exited the courtroom and proceedings continued in open court as follows:)
> THE COURT: Mr. Deleo, if you'll step down. Mr. West and Mr. Corrothers want to visit with you a minute before you testify. They want to talk with you, your lawyers.
> DEFENDANT DELEO: Okay.

Tr. 542-44. After the recess, West announced that Deleo had decided not to testify. The Court then inquired of Deleo as to whether he wished to testify or not, and Deleo told the Court that he had decided not to testify. Tr. 545-46.

West has submitted an affidavit in which he admits that he made a mistake in calling Deleo to the witness stand without first ascertaining whether information that had been excluded pursuant to his motion in limine could be grounds for cross-examination when Deleo took the stand. The first element of the *Strickland* test is met here. West's decision to call Deleo as a witness under these circumstances was an error so serious that at that moment West was not functioning as the counsel guaranteed to Deleo by the Sixth Amendment.

11

Nevertheless, Deleo cannot show that this incident prejudiced the defense. While Deleo contends that the jury would have concluded from this incident that he had something to hide, no basis for that assertion appears in the record. The jury saw West call Deleo to testify and saw that Deleo was sworn and took the witness stand, after which the Court called a bench conference and excused the jury. When the jury returned, Deleo was no longer on the stand, and the Court proceeded directly into the closing instructions followed by closing arguments. Tr. 560 *et seq*. Thus, from the standpoint of what the jury saw, it would have appeared that Deleo wanted to testify but the Court took some action that prevented him from doing so. Moreover, the Court instructed the jury:

> There is no burden upon a defendant to prove that he is innocent. Accordingly, the fact that the defendants did not testify must not be considered by you in any way, or even discussed, in arriving at your verdict.

Tr. 564. The law presumes that the jury followed this instruction. *United States v. Gardner*, 396 F.3d 987, 993 (8th Cir. 2005).

Most importantly, the evidence against Deleo was sufficiently compelling that Deleo cannot meet the prejudice element of the *Strickland* standard. The evidence established that Deleo sent $50,000 in cash to Le by Federal Express on November 19, 2008. Then, in December of 2008, Le drove from Little Rock to Los Angeles and returned with 2.2 kilograms of cocaine. Expert testimony established that in Los Angeles a kilogram of cocaine would sell for $18,000 to $25,000. Tr. 469. As mentioned, the FBI tapped Thompson's telephone. Fifty-one tape-recorded telephone conversations, taken from these wiretaps, were introduced into evidence. Those tape-recorded conversations included conversations between Thompson and Le, Thompson and Deleo, and on at least one occasion, Deleo and Le. As those recordings proved, while Le was traveling from Los Angeles back to Little Rock with the cocaine, Thompson called Le several times to determine his

location and when he expected to arrive in Little Rock. After ascertaining this information from Le, Thompson would call Deleo and relay that information to him. Thus, both Thompson and Deleo were monitoring Le as he traveled from Los Angeles to Little Rock with 2.2 kilograms of cocaine. Gov't Ex. 8-1 through 8-9. While Le was in Little Rock, Thompson and Deleo spoke several times regarding when Le was expected to leave. *See* Gov't Ex. 8-9 through 8-20. Moreover, Deleo gave directions for Le's drive to the Boston area and specific instructions as to when and where Le was to meet him, i.e., at the Doubletree Hotel near Exit 18 of the Massachusetts Turnpike on Sunday afternoon. Gov't Ex. 8-12, 8-18, 8-19, 8-20. Finally, after Le was arrested, Thompson and Deleo spoke on several occasions. It was apparent from their conversations that they knew that Le had been carrying 2.2 kilograms of cocaine, and they considered it devastating that Le had been stopped and caught with the cocaine. Gov't Ex. 8-25 through 8-51. In one of their earliest conversations, Thompson learned that Le's bond was placed at $50,000, and he and Deleo concluded that the charges must not be too serious because the bond was only $50,000, and the lawyer (whom Thompson arranged for Le) indicated that he would be able to reduce the bond to $25,000. Gov't Ex. 8-25. Thompson contacted a bail bondsman about getting a bond for Le. The bail bondsman contacted the Lonoke County Sheriff's Department and then reported to Thompson that the police had discovered "over two keys of cocaine" in the car. Gov't Ex. 8-28. She reported that to Thompson, who called Deleo and reported, "They got it." Deleo responded, "They got it?" Deleo then said, "If he's gonna get bond, it still can't be for that." Thompson responded that the bail bondsman "knew exactly how much was there." When Deleo asked what, Thompson said, "She said

13

2.2 kilos."[5] Gov't Ex. 8-29. The remarkable aspect of this conversation is that while Thompson mentioned that the police had found 2.2 kilos, he never said 2.2 kilos of what, nor did Deleo ask. Both of them knew, without the need to say so, that "it" was cocaine. Other telephone conversations between Thompson and Deleo also were incriminating. In one of them, Deleo suggested that someone might be bribed to remove the cocaine from the evidence vault. Gov't Ex. 8-47.[6] Thompson did not, however, have adequate contacts at the Lonoke County Sheriff's Department to enable that to happen.

On May 12, 2009, Thompson's residence was searched. During that search, the agents seized handwritten notes of directions to "Exit 18, Doubletree," Tr. 186; an envelope addressed to Thompson from Deleo, Tr. 187-88; handwritten notes referring to Deleo, Tr. 191; a notepad with the name of the Arkansas State Trooper who arrested Le, Tr. 193; and contact information for Deleo, Tr. 194-95.

On November 16, 2009, Deleo was arrested and his residence was searched. Among the items seized during the search were handwritten notes with directions to the Doubletree Hotel near Exit 18 of the Massachusetts Turnpike, which is the location designated as the place where he and Le were to meet. Gov't Ex. 12-3; Tr. 396. The agents also seized $5,800 in cash that Deleo had with him when he was arrested, Tr. 400; $35,000 in cash found in a cabinet, Tr. 406; two walkie-talkie radios, Tr. 407; notebooks with Thompson's name and contact information, Tr. 409-10, 417,

---

[5] The bail bondsman reported that the police had found "over two keys of cocaine," not 2.2 kilograms. Nevertheless, Thompson knew the precise amount—2.2 kilograms—as did Deleo.

[6] Deleo initiated this discussion by asking whether "there is any way anything can be lost there?" During that discussion, he suggested that someone "remove it from there" and that maybe "ten can go in that person's direction." Gov't Ex. 8-47.

14

419-20;[7] a radio that could be used as a police scanner, Tr. 414; a pair of handcuffs and a universal handcuff key, Tr. 415; digital scales, Tr. 418-19, 429; an envelope addressed to Deleo from Thompson, Tr. 418; inositol powder, which can be used as a cutting agent for cocaine, Tr. 425; Ziplock bags, Tr. 426; and 10 grams of cocaine, Tr. 430-31, 449. All of these are items used in drug trafficking. Tr. 456-62.

From a review of the evidence as a whole, the one mistake that West made at trial—placing Deleo on the stand and then taking him down after learning about the scope of cross-examination—does not undermine confidence in the outcome. The recordings of the conversations, along with the other evidence, conclusively prove that Deleo conspired with Thompson and Le to possess cocaine with intent to deliver, that he used a communication device to facilitate a felony drug transaction, and that he aided and abetted possession with intent to distribute more than 500 grams of cocaine.[8] Deleo cannot meet the prejudice element of the *Strickland* test.

Deleo also contends that West was ineffective for failing to file post-trial motions on his behalf. He says that he tried to get in touch with West, but West did not return his calls, so he filed post-trial motions on his own. *See* Documents #121, #125, #142. All of those motions were without

---

[7] One of the notes with Thompson's contact information also included a reference to "Mike Tri Le." Thompson referred to Le as "Mike" or "Mikey."

[8] In the Massachusetts case, Deleo pled guilty to violating the Racketeer Influenced and Corrupt Organizations Act. In the superseding information to which he pled the first overt act in furtherance of the racketeering conspiracy is the conspiracy between Deleo, Thompson, and Le to possess cocaine with the intent to distribute in December of 2008. The Massachusetts case Document #95 at 9. At the change of plea hearing, the prosecutor in Massachusetts recited the facts of this case as an overt act in furtherance of the racketeering conspiracy, and Deleo admitted those facts. The Massachusetts case Document #195 at 17, 20-21. Because of Deleo's pending motion to set aside his guilty plea, however, the Court will not take judicial notice of Deleo's admissions in that case as a basis for concluding that he cannot meet the prejudice element of the *Strickland* test.

15

merit. West in fact filed a motion for new trial on Deleo's behalf. *See* Document #159. That motion was denied. Document #171. Deleo had no grounds for any meritorious post-trial motions.

As noted, Deleo contends that the government engaged in misconduct by allowing Le to testify falsely. He contends that Le testified falsely that he had happened to meet Nguyen in a Los Angeles coffee shop; that Le testified falsely that he had not seen Nguyen in ten to fifteen years; that Le testified falsely that Nguyen introduced him to Tony "Viet" Doan, the alleged cocaine supplier; and that Le testified falsely that he did not know Doan before Nguyen introduced him in Los Angeles. He also points out that Le made prior statements to police that he was taking the cocaine to Memphis, whereas at trial he changed his story and testified that he was taking the cocaine to Boston.

The Eighth Circuit has explained:

> [A petitioner] can obtain habeas relief only if the asserted trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637, 113 S. Ct. 1710 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946)). This standard requires a showing of "actual prejudice" for habeas relief. *Id.* (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986)). The Supreme Court has avoided assigning a formal burden of proof for this analysis, but it has stated that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L. Ed. 2d 947 (1995).

*United States v. Clay*, 720 F.3d 1021, 1027 (8th Cir. 2013).

Here, as noted, the evidence apart from Le's testimony strongly supports conviction. The totality of the evidence, including the recorded telephone conversations between Deleo and Thompson, conclusively proved that Deleo and Thompson planned for Le to deliver cocaine to Deleo in the Boston area. As mentioned, Deleo sent $50,000 in cash to Le shortly before Le traveled to Los Angeles. The wiretaps show that Thompson and Deleo monitored Le's progress as he traveled from

Los Angeles to Little Rock with the cocaine, and they spoke several times while he was in Little Rock regarding when he would leave Little Rock and travel to Boston. Deleo provided a specific location where he was to meet Le and gave directions as to how Le was to travel so as to meet him at that location. After Le was arrested, Deleo and Thompson had several telephone conversations that cannot be explained if they were not participants in the conspiracy to possess the cocaine with intent to deliver. In one of those conversations, Deleo suggested that someone might be bribed to remove the evidence from the evidence vault. These telephone conversations can be explained if and only if there was a conspiracy to possess cocaine with intent to distribute and Deleo was a knowing participant in it. *Id.* at 1027-28.

Moreover, Le's false testimony had little impact on the verdict for the additional reason that Le was thoroughly impeached at trial. It was brought out that Le told police officers that he received the cocaine from "a black guy" in Little Rock and was paid to drive it to Memphis. Tr. 70, 285, 287, 298-99, 305. It was brought out that Le told officers that he was traveling to Tunica to sell the cocaine. Tr. 71. It was brought out that Le gave the officers a false name. Tr. 60. It was brought out that Le had said that he was traveling to Boston to make arrangements to ship a Lexus to Vietnam. Tr. 305. It was brought out that Le called Doan two days after receiving the Fed Ex envelope containing $50,000, which means that his testimony at trial that he had never met Doan until he arrived in Los Angeles had to be false. Tr. 313-19; 361-63; 380-81. That Le had prior felony convictions for crimes of dishonesty was also proven. Tr. 326-28. Thus, Le was thoroughly impeached at trial. Both defense lawyers made Le's lack of credibility the centerpiece of their closing arguments. Tr. 602-11, 613-15.

17

In view of the overwhelming evidence that Deleo is guilty, and in view of the thoroughness with which defense counsel impeached Le at trial, any false testimony by Le could not have had a "substantial and injurious effect or influence in determining the jury's verdict." *Clay*, 720 F.3d at 1028-29 (quoting *O'Neal*, 513 U.S. at 436, 115 S. Ct. at 992). Deleo's argument that he is entitled to a new trial because the government relied on perjured testimony by Tri Cam Le is without merit. *Cf. United States v. L'Donna*, 179 F.3d 626, 629 (8th Cir. 1999) (defendant failed to prove that she was entitled to a new trial where the evidence of her guilt was great and the alleged perjurer was effectively impeached at trial); *United States v. Jordan*, 150 F.3d 895, 900 (8th Cir. 1998) (defendant failed to prove that there was a likelihood that the perjured testimony could have affected the jury's verdict where the witness was effectively cross-examined and the government presented substantial evidence against the defendant); *United States v. Slaughter*, 128 F.3d 623, 631 (8th Cir. 1997) (no likelihood that allegedly perjured testimony could have affected the jury's judgment); *United States v. Rabins*, 63 F.3d 721, 725 (8th Cir. 1995) (where the credibility of the perjurer was effectively attacked and his testimony was for the most part cumulative, no likelihood that the false testimony could have affected the judgment of the jury); *United States v. Duke*, 50 F.3d 571, 580 (8th Cir. 1995) (where the witness had been effectively impeached at trial no likelihood that the false testimony affected the judgment of the jury).

Finally, Deleo contends that he is entitled to a new trial because the government intentionally failed to investigate three material witnesses, Bao Chan, Tuan Nguyen, and Tony "Viet" Doan. As mentioned, Chan was a passenger in the vehicle with Le when Le was stopped with the 2.2 kilograms of cocaine; the vehicle that Le was driving was registered to Nguyen, who (according to Le) previously had been Le's roommate; and Le testified that he purchased the cocaine from Doan in Los

18

Angeles. Deleo asserts that Chan could have testified as to whether he was traveling to Memphis; that Nguyen could have testified as to whether Le was traveling to Memphis or Boston and whether he introduced Le to Doan; and that Doan could have testified as to whether he in fact sold Le the cocaine.

The Eighth Circuit has explained:

We have held that the following circumstances indicate reckless or intentional failure to investigate that shocks the conscience: (1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposely ignored evidence suggesting the defendant's innocence, (3) evidence of systematic failure to implicate the defendant in the face of contrary evidence.

*Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009). "An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct." *Id*.

Here, there is no evidence that the government attempted to coerce or threaten Deleo, that the investigators purposely ignored evidence suggesting that Deleo was innocent, or that there was systematic pressure to implicate Deleo in the face of contrary evidence. In light of the recordings of the telephone conversations between Deleo and Thompson, as well as the other evidence, there is no reasonable likelihood that Chan, Nguyen, or Doan could have provided evidence that would have shown that Deleo was not part of a conspiracy to possess cocaine with intent to distribute. Chan, Nguyen, and Doan could have known nothing about where Le was traveling apart from what Le told them. Even if Le told them that he was traveling to Memphis, the fact remains that Deleo and Thompson conspired to have Le transport the cocaine to Deleo in the Boston area, as confirmed by the recordings of their telephone conversations and the other evidence in this case. Likewise, even if Nguyen and Doan had contradicted Le's testimony as to how he acquired the cocaine, their testimony could not have altered the facts that established the conspiracy, i.e., that Deleo sent Le

$50,000 in cash; that Le acquired 2.2 kilograms of cocaine; that Deleo gave directions for Le to meet him at the Doubletree Hotel near Exit 18 of the Massachusetts Turnpike; that Le left Little Rock with the cocaine headed east after Deleo gave him those directions; that Thompson and Deleo regarded the seizure of the 2.2 kilograms of cocaine as devastating; and that Deleo proposed that an officer might be bribed to remove the cocaine seized from Le's vehicle. Nothing that Chan, Nguyen, or Doan could have testified about would have changed these facts. Thus, even if the investigators were negligent for not investigating Chan, Nguyen, and Doan, that failure on their part is not the kind of conscience-shocking failure that could result in a new trial for Deleo.

## CONCLUSION

Ralph Francis Deleo's motion to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255 is without merit and is denied. Deleo has failed to make a substantial showing that he was denied a constitutional right, so no certificate of appealability will be issued. All pending motions are denied as moot.

IT IS SO ORDERED this 6th day of January, 2014.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE